At least this afternoon is 4-17-0-1-0-6. It will be Musgrave. For the appellant is Maria Harrigan. Pronounce correctly. And for the appellee is James Williams. Ms. Harrigan, you may proceed. Good afternoon, your honors. I represent Mr. Musgrave's appeal. And the section that I would like to issue the first issue raised in my brief that Musgrave's pre-trial motion to quash should have been granted by the trial court. The critical question in this case is whether the police prolonged the traffic stop in corresponding seizure of Mr. Musgrave, which led to the discovery of contraband. An examination of the record demonstrates that the stop was prolonged by the actions of Officers Pine and Johnson and Townsend. Pine called Musgrave over for a traffic violation. He took his license, got to the squad car, checked out Musgrave's license, registration, and insurance. After everything had checked out, Pine determined he was only going to issue a warning and began writing one. As he was completing the warning, Pine saw Johnson drive up. Johnson went to the car, questioned Mr. Musgrave, or him out of the car, and asked for a consent to search. Pine didn't get out of his car until Musgrave was already taken into custody. So the two officers together, the purpose of the stop was over, and by allowing the questioning of Mr. Musgrave, this prolonged the stop, which tainted the consent to search. The case cited in my brief, Pickle v. Albury, is directly on point with this case. In that case, the defendant was a passenger in the car, pulled over for a traffic violation. After the driver's license and registration checked out, there were no warrants out for him, the officer was going to write a warning. He had not even started writing the warning when the passenger was questioned, which prolonged the stop until he obtained the consent to search the car. In this case, he obtained the consent to search Mr. Musgrave's person. Exactly the same case. How can a stop be prolonged when the officer is still in the process of writing the warning ticket? The officer had determined that he was going to write the warning ticket, and he was almost done writing it when the questioning began. In Albury, the officer hadn't even started writing the warning ticket when the questioning began, and the court found that was a prolonged stop. In both cases, the defendant was not free to leave at that time, and he had not received his paperwork back. In both cases, a decision had been made that only a warning was going to be issued. And then questioning, in which an officer obtained consent to search, prolonged the stop beyond its purpose. I still don't get it. If he's writing the ticket, until the ticket is written, the stop is still in effect. So how can it be prolonged when the ticket is still being written, whether it's a warning ticket or otherwise? The Albury court found the same thing, when the ticket hadn't even been written yet, that the stop was prolonged, although the decision had been made in the officer's mind. Was that a 1st District case? That was a 3rd District case. I thought the Albury, you cite 1st District 2010. The Albury is a 3rd District case. Well, the question is, why should we follow it? Well, it's well-reasoned in the sense that it was cited after Harris. It follows U.S. and other Supreme Court law about looking only at whether the stop was prolonged. And in both cases, the stop was prolonged by the questioning. Klein saw Johnson questioning the driver. And so, again, the actions of both officers together, in concert, prolonged the stop. Well, you know, the focus ought to first be on Klein, who was writing the warning ticket. And the whole thing, I think it took 9 minutes. In the Albury, it took 5 minutes. Well, Counsel, it's not helpful that you keep citing this case to us that's a different fact in a court that we don't have to follow unless we find it well-reasoned. So, let me stay with this case and ask you about this one. It was 9 minutes. And Klein is writing the ticket when Johnson approaches to talk to the defendant. Isn't that what happened? That's what happened. Klein was just about done writing the ticket. Well, but he wasn't done. He was still in the process of writing the ticket. So, to what extent did Johnson's conversations with the defendant prolong how long it took Klein to write the ticket? It was Johnson's conversation with the defendant in concert with Klein remaining in his car. See, that's not the question. I try to ask my questions really careful. To what extent did Johnson's conversation with the defendant prolong how long it took Klein to write the warning ticket? Again, Your Honor, I can only answer that by talking about what Klein did as well. Because Klein was writing the warning ticket. He was almost done when he saw Johnson approach to not get out of the car. So, the answer is no effect. The questioning itself prolonged because Klein remained in the car. How did Johnson's questioning of the defendant prolong Klein's writing the ticket? Because Klein remained in the car until the questioning was over. Until he was taken into custody. See, Klein is still writing the warning ticket when Johnson is talking to the defendant. Is that correct? He said he was finishing writing the warning ticket. So, finishing writing means he wasn't yet done. Correct. The defendant was still seized at that point. He could not leave. Because of the traffic stop. Right. Because of the original seizure. Okay. So, Klein is writing the ticket when Johnson is talking to the defendant. Correct. And had Klein finished writing the ticket when... I don't know that Klein ever actually finished writing the ticket. When Johnson asks for and gets the defendant's consent. Are you placing inferentially, are you placing a duty on Klein to get out of the squad car and say, I'm just writing a warning ticket. No further questioning is needed. Get away from this guy. Go away. I'm in charge of this stop. Unless you're saying the opposite. That he purposefully took longer to check the driver's license, the insurance, identification, run warrant check, and then begin the paperwork on the warning ticket. Unless you're saying he did that on purpose to make it last longer. I have no basis for saying that. I can't. There's nothing in the testimony that indicates that. So, is he supposed to get out and stop them from questioning before he's done with writing his warning? I'm not exactly sure that that's a duty that's on him, but he's the one that made the original traffic stop. Right. And he had made the decision that it was going to be a warning. And he had just about finished writing the warning ticket when the It shouldn't matter how many officers appear on the scene. The police officer after being conscripted, I assume from where he went out, which is how Johnson happened upon What if he wrote the ticket and brought it back to the car and said we've already got a dog here. Do you mind if the dog does a dog sniff? Well, they couldn't. I know that they can't delay the stop for It isn't delayed. He's handing it to him and says, do you mind? And the dog's already there. According to the record. The dog is there. Yeah, the dog never, they never used the dog in this case. There was never a dog sniff in this case. Let me ask this question. Does the record contain any evidence to suggest that Klein delayed or otherwise hindered his efforts so that other officers could investigate matters unrelated to the traffic stop? The only thing we have is his testimony that he saw Johnson come up as he was finishing writing the ticket. He said what he was doing when Johnson arrived. So I guess that's a no? Inferentially. The record isn't clear that he See, let me ask this question again. It really calls for a yes or no answer, Counsel. And if you can't, you can explain why not. Does the record contain any evidence to suggest that Klein delayed or otherwise hindered his efforts so that other officers could investigate matters unrelated to the traffic stop? Other than him remaining in the car, no. He remained in the car and saw Johnson there. That's my answer to the question. So he remained in the car while winding out the warning ticket? While finishing writing it, yes. And the total time here was nine minutes? Nine to ten minutes. Ten minutes from the time he was at the stop that he was pulled over. Okay, you may proceed. Counsel, when you use the term prolong you do mean to lengthen or extend. That's what your, when you use that phrase, that's what you mean, isn't it? Or do you mean something else by prolong? No, that's the understanding. Prolong beyond the mission of the stop, which I'm not saying anything about changing the nature of it. There is a tension between those two things. Actions that prolong the stop may change the nature of it. I understand that's not a relevant consideration. Unfortunately, my pro se client is reacting to that delusion. Yes, prolonging is making, going beyond the boundaries of the purpose of the stop. And the officer had already determined it was going to be a warning ticket in this case. Everything else checked out. But the officer has to write the warning ticket. So that is part of the length of the stop, isn't it? Correct. That's part of the stop, yes. And again, I know Justice Steinley doesn't like me to mention Al Goree, but that is a case that's decided by an appellate court. I don't think Justice Steinley cares if you mention it. We're probably not real impressed with its reasoning. Maybe not. I was on point with my case, so I felt that I think he would have been remiss not to cite it. Also, if you look to the judge's findings in this, he really focuses on the time, the amount of time he minutes, not the other facts in the case. It doesn't matter if there was probable cause at the time. There's no separate Fourth Amendment right here, because there was a consent. If the officer had just gave him a pat-down when I'm intending, that would have been a different Fourth Amendment that would have triggered another Fourth Amendment problem. But we don't have that here. But the judge really didn't focus anything more than the exact time, the number of minutes that he made the finding. And really, if you look to other cases, there's also Baldwin, which is also not a Fourth District case, that is very similar. It is a case which the state did not dispute in its brief. It didn't address that case in its brief. And in Baldwin, there was also a short stop, five minutes. The defendant was going to get a warning ticket, but he wouldn't consent to search, so they brought it off. And the court, that district court, said that that was also prolonging the stop, because the decision had been made to give the driver a warning ticket. And those were the questions. Well, you had other issues you raised. Yes, the sentencing issue. I wasn't going to argue that, but if you had questions. Where does the idea of a trial tax come from? The idea of a trial tax? Well, in case law, it talks about punishing the defendant for exercising his right to trial. And in this case, the judge was willing according to the way the record reads, the judge was willing to entertain giving Mr. Musgrave 13 years for a plea to a higher class felony. And then at the time of after trial, which was a stipulated bench trial, he gave him 16 years for a lower class felony. And I understand that there's he did not say out loud, I'm doing this because he wants a trial. But the inference can be made that the judge knew about Mr. Musgrave at the beginning of trial day. There have been many proceedings and he was going to sign off to this plea agreement. The dispute was that the defendant thought he got double credit at the time, which did not, which is not the case. And once he found that out he would not take it. But the judge was willing to do this. And now he's a lower class felony and he got three more years. When you say the judge was willing to do that, you mean the judge was not going to say I'm not going to go along with the plea agreement? Correct. I understand that the plea agreement hadn't been formalized yet. But from the discussions in the record, it appears that the judge was just trying to make sure that Musgrave understood he wouldn't get this double credit. And once he understood the ramifications of that, that he was going to be okay signing off to that plea. We, this court, came up with a decision a couple years ago already people versus Williams about a trial about a pretrial flight check. And one of the things we talked about was how the trial court should ask the attorneys for what was the plea agreement, if any, what offer was made before going to trial. And the lawyer should tell the court what was said not because it's the court's business, but so we don't have subsequent post-conviction petitions filed saying that offer was never communicated to me or I was never told 8 years, I was told 12 years, etc. Given the argument you're now making, does a trial court have to indicate that's too low or I'm not to avoid being charged as you are now charging the court with imposing a trial tax if the court imposes a sentence greater than the plea offer? I don't know that it has to be necessarily that explicit, but it seems to, from my reading of this record, that the judge was willing to go along with this plea agreement because of the nature of the discussions he had. Okay, pausing right there, let's assume you're right. What does that mean, that the judge was willing to go along with it? He would have allowed that plea agreement to be in the case. What should be the standard upon which a judge would say no, I'm not going to go along with it? I guess if the judge felt that there was something wrong with the sentence or something wrong with the charges that were being dropped and something was wrong with the agreement. Well, how about the fact that some of us, like me, I was a trial judge for 12 years, thought that it's not the business of trial judges to reject plea agreements that are being made between the parties as opposed to my Cook County brethren when I used to hold court up in Cook County in the 80s who were involved actively in plea bargaining. I thought it was an outrage. So, if it was my practice as a trial judge not to be second-guessing the prosecutor because, of course, I could do a better job than the prosecutor could, that I would be stuck if I said nothing with regard to what the plea offer was, which is now, if you follow the pre-flight checklist, the requirement under Williams to speak. So, if the state said in this armed robbery case, we offer him a plea for eight years on a guilty plea to armed robbery, that I'm stuck after trial if the state recommends more or I want to give him more, that I'm now going to be charged with imposing a trial tax. Is that right? I wouldn't say that that's a blanket rule. Well, why would it, that's what you're accusing Judge Kraszewski here of, isn't it? Well, in this case, we also have a, it was a plea to a higher class felony. The eventual guilty finding was for a lower class felony. It was a difference between possession and possession with intent to deliver. Why does any of that matter? Because generally, a higher class felony is a more serious offense. Why does it matter with regard to what the judge has to say or needs to say and whether the judge is going to be charged with imposing a trial tax? You can look to other things in the record to determine if it's a trial tax or not. I found things in this record from the reading in it that may have me raise this issue because of the disparity in sentencing. Some of the other things the judge did about Disparity in sentencing who? The disparity between the sentence in the plea offer and the sentence that the defendant eventually received. As well as the judge, what seemed like a policy that he would just give more, an increased sentence each time somebody got convicted and that seems to me to be expressed as more of a personal policy than just, I'm considering your record. So I think in conjunction, the trial tax wasn't the only improper thing I thought that happened in sentencing that I raised in this issue. It was a group of things that I thought caused what I thought was an excessive 16-year sentence for possession. This defendant didn't hurt anybody. He was not impaired while he was driving and the officers did not think he was impaired. There was no indication that he was going to injure anybody or have an accident. So the 16-year sentence in our community is excessive. We're writing decisions for trial courts everywhere, but particularly in the 4th District and if we would agree with you, yeah there was a trial tax imposed there. What message, how do we communicate this to the trial judges on what they should do in the future to avoid being charged with imposing a trial tax? How do we write that? I've never been a judge, so I'm not sure how to handle this. Well how about don't disclose to the court the private plea negotiations between the state's attorney and the defense lawyer? That's a possibility. If the trial court asks the state and the defense attorney to disclose plea negotiations, can they say no, we don't care to do so? Those were private between the parties and the court doesn't need to know. One party agreed to disclose and the other party didn't agree to disclose. What would you think about that? I would think both parties would have to agree to disclose. That would just be off the top of my head. I had not looked at this aspect of this issue. I get it. It's not really your argument here. Just to quick sum up, any time the state discloses a plea agreement that wasn't accepted and the case then goes to trial, is the argument, and the court imposes a sentence greater than the plea agreement, is the argument that this was a trial tax always capable of being made? No, I would say that in cases where more information came out at the trial that was not apparent from a factual basis of a plea agreement, then that would be different. If he had a record... I'm not talking about a factual basis for a plea agreement. I'm talking about a statement of what the plea offer was. There's no factual basis when there's been no plea actually being taken. What's happening at the summary of my checklist is the state says, yeah, we offered him eight years on a plea to hire a bribery. Is that correct? Yes, that is. And is that correct, Mr. Defendant? Yes. And that's what the defense turned down? Yes. Okay, let's go to trial. Okay, so that's all we know. So then a guy goes to trial and is convicted, and the court gives him 12 years. That's a trial tax? No, I wouldn't say that. In this case, the judge knew facts about this case. There had already been a brief trial motion. He knew exactly what was happening in this case and agreed, seemed willing to agree with it. The plea offer was almost done. It wasn't just like we offered him an objection. There were facts on the record about it here. And you could compare those facts to the stipulation of the stipulated bench trial. So if he had a motion to suppress, of course, typically, and I don't know that that was the case here, you can remind me, typically, the court won't know or have heard about the defendant's prior record. That's possibly true as well. In this case, I think that there was more on the record. It's a unique case. I'm not saying in every case a plea is just objected and all that's on the record is the amount of years. No, I don't think you'd be able to make that argument. In this case, we have more. You have a chance to address this again, Robo. Thank you. Mr. Williams. Counsel. A distinction without a difference. That is the defendant's opinion regarding the facts of this case relative to the facts of the cases upon which he relies. However, the factual distinctions here make all the difference. In those cases, the officer who initiated the stop thereafter devoted time to matters unrelated to the purpose of the stop. And in doing so, prolonged the stop. And the stop lasts longer than it otherwise should have. Here, on the other hand, the officer did no such thing. After observing four traffic violations, the officer initiated the stop at 210 P.M. The officer approached the car, introduced himself, and observed that the defendant was operating a catered cab from Wilmington and appeared to be nervous as sheep. The officer then simply requested a backup unit before working diligently and exclusively on ordinary inquiries incident to the traffic stop. And here, those included confirming that the defendant had a valid driver's license and insurance. He did. Checking for outstanding warrants against the defendant in the passage. There were none. The officer also had to fill out a vignette entry card with a written explanation in relation to the traffic stop. And, of course, the officer had to attend to the traffic violations themselves. And here, the officer decided to issue these warnings. Now, while this first officer is working exclusively on these matters incident to the traffic stop, a backup officer arrives, requests consent to search, which the defendant did, whereupon the officer finds 22.5 grams of cocaine. At 220, exactly 10 minutes after the initial seizure, the backup officer arrests the defendant. Now, during that 10-minute time, the officer who eventually was stopped in the first place never did anything unrelated to the person that stopped. He did not request the defendant's consent. He did not even hear the request because he's in a squad car diligently working on the traffic warnings. The officer did not assist in the search of the defendant, nor did he assist in actuating the arrest of the defendant. Instead, he remained in his squad car the entire time, working diligently and exclusively on matters incident to the traffic stop, which notably, he did not even complete before the defendant was arrested. And to answer Your Honor's question, there's no evidence in the record, no suggestion in the record, that this officer in any way delayed the execution of these various duties so as to accommodate the other officers. Right. Well, counsel, let me ask you this. If the officer decided to stop the vehicle, and before doing so, contacted the K-9 unit and said, hey, I'm gonna stop this vehicle, I'm gonna be writing a ticket, why don't you get the dog over here and do the sniff as quickly as possible so that it's within the time frame it's gonna take me to write the ticket, would that be a problem for the state if that, if those facts were present, instead of what we have here? Well, I think the question there would be, did that measurably prolong the stop? That's the basic standard in the United States Supreme Court. Now, an argument can be made there, and I'm not aware of case law, you know, addressing the specific factors. Does the mere request, just simply saying, hey, does that measurably prolong the stop? I would say that it doesn't. I mean, there are other cases, such as Harris from the Illinois Supreme Court, where he said that... Well, his hypothetical specifically excluded that. He was called, the drug dog was called even before the stop was made, and he says, I'm gonna be making this stop, why don't you come over here and while I'm processing this ticket, check out this car. That was it, wasn't it? I think under those circumstances, the officer hasn't even initiated the stop, and so seemingly there's no way in which the stop would be prolonged by to initiate the stop. Well, isn't the focus supposed to be on what happened, if anything, to prolong the stop, the administration, so to speak, of the traffic ticket from the beginning to end of that? Correct. So, I don't think that that would be any problem in the State of Nevada. Well, in any event, your argument here is the stop was not prolonged because the officer was still running the ticket at the time that the other officer arrived and began questioning the defendant. Right. Okay. I mean, that's exactly it. The officer was diligently working on these matters... Well, another way to say it would be that the officer couldn't have written the warning ticket any quicker than the 9-minute frame that we have here, 9-minute time frame that we have here. Yeah, to that end, your Honor, there's really no testimony here regarding what a typical length of a stop would be, right? Well, let's just say for the sake of argument that, you know, it was 15 minutes, right? That's how long it takes to just write a traffic warning. Well, when the officer who initiates that stop devotes time to some unrelated matter, that takes time away from that 15 minutes and thereby adds time to the time frame in which this traffic stop has to be completed. Now, here, of course, there's no testimony on point, but when an officer in circumstances that we have here, where an officer initiates a stop and works on nothing more than completing the paperwork necessary for that stop, while another officer attends to some other matter, such as requesting a census search, that doesn't take time away from the total time needed to complete that stop, and it doesn't add any time to the total time needed to complete that stop. And that's where there's just a fundamental difference here between the cases that... between this case and the cases that the case that the officer devoted time to an unrelated matter, therefore prolonging how long the stop should have taken. If the officer would have done it, the stop would have otherwise taken a shorter amount of time. But the officer, in essence, by devoting time to some unrelated matter, delayed the stop, added time to the stop in violation of the Fourth Amendment. Here, the officer did nothing unrelated to the stop, and therefore he did not prolong the duration of the stop. So the state and the defendant clearly have different views on what has happened in this case. The defendant believes that the police have violated his Fourth Amendment rights. The state, on the other hand, believes that really the police here have engaged in model procedure, and in that way, the state believes that this is actually a very important case in guiding police in how to conduct themselves here forward. So unless the court has any further questions on the first issue, I'd be willing to address the second issue. Okay, go ahead. So your lawyers asked about the new defendant. The record contains, quote, strong evidence of the trial tax. That strong evidence is literally nothing more than the fact that the court proposed a 16-year sentence after trial when the state had, before trial, before the preparation of the precedence investigation report, before any of this, the state had made a preliminary offer for 13 years. Now, the defense has argued here today that the court indicated that it was willing to accept that. Perhaps I missed it in my review of the record, but I don't believe I saw anything indicating that the court was willing to accept the 13-year. I believe that the argument is framed in basically that the court didn't voice an objection to the 13 years, from which it can apparently be deduced that the court was willing to do it. I don't believe there's anything in the record that affirmatively establishes that the court looked at this and said, I'm willing to accept the 13 years. Now, even if there was, it's important to keep in mind, that preliminary indication, as you know, that occurred before the preparation of the PSI, before perhaps the judge was aware that this defendant had two prior presence sentences for very similar, serious Class X and Class I drug felony offenses of 10 years and 12 years. That's probably before the court would have known that the defendant had just gotten off of parole when he picked up this third similar drug felony. And of course, it's also before the stipulation was entered, where the defendant agreed that the 22.5 grams of cocaine was an unusually large amount, that it was not consistent with a mere user amount. It also stipulated that the drugs were packaged in a way that was consistent with drug distribution. Now granted, the state did agree to drop that charge, but that does not preclude the trial court from considering that sentence. And unless this court has any further questions, thank you for your time, Your Honor. Ms. Harrigan, you need rebuttal, ma'am? Again, the actions of the officers, Klein and Johnson in concert with their felonies out in this case. I believe that what happened in this case is hypothetical. I just wanted to point out that the dog was probably called before the stop was over. Pausing right there, in answer to the question you raised, would there be anything improper in that? I think that would yes, I think at that point, that would prolong the nature of the stop. Maybe it's a problem with language. As he said, prolonging means however long the stop would have taken in the absence of X, did X cause it to be longer? That's what prolong means. It would have to do perhaps with when the dog appeared. If the warning he was going to write a warning, and that was done, and they were waiting then I do think that would prolong the stop. Oh, if they were waiting, but if the evidence is it's from the time the car was stopped until the time the car was running. He's done it all. It's now nine minutes. Doesn't seem like a reasonable time. Why would it matter if before he even stopped the car, he called the guy with the drug dog and said you know I'm going to be stopping the car at the interstate here at mile marker 137, why don't you come on by? Do you think that would be improper? That in itself would be, just the phone call itself? Well, the phone call I guess it's not. I don't think it's improper. Yes, I do think under the case law, making the call, you didn't sit there and wait for the dog after the person stopped. The evidence shows he just wrote the ticket and while he was writing up the warning ticket or whatever during that nine minutes, the dog shows up and walks around the car. I mean, these cases all turn on, they're very factually based. Well, that factual scenario, would there be any impropriety? I'd have to think about that, your honors, but I do think that the actions of the officers together, it should not matter how many officers are involved, the questioning itself prolonged the stop in this case because an officer client had remained in his car. And again, we still believe that Mr. Musgrave's worth and the right to provide a warrant by that. I don't have anything else to say about the child sex offender. We didn't discuss that. Okay. Thank you. We request that this court reverse the motion to press for a reduced sentence. Thank you. Thank you, counsel. Take this vendor and advise him to be released for a few moments.